**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

ELSIE M. MAYARD,

Plaintiff,

v.

ADAM P. SIEGFRIED,
JOHN HARRINGTON, SALIM OMARI,
JASON L. WHITNEY,
PAUL P. SCHNELL, MARK A. McGINN,
and CITY OF SAINT PAUL,

Defendants.

Civil No. 08-5853 (JRT/SER)

**MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Lora M. Friedemann, **FREDRIKSON & BYRON, P.A.**, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402-1425, for plaintiff.

Cheri M. Sisk, Assistant City Attorney, **CITY OF ST. PAUL ATTORNEY'S OFFICE**, 750 City Hall and Courthouse, 15 West Kellogg Boulevard, St. Paul, MN 55102, for defendants.

Plaintiff Elsie M. Mayard brought claims against St. Paul police officers Adam Siegfried, Salim Omari, Jason Whitney, Paul Schnell, and Mark McGinn (collectively, "officers"), as well as former St. Paul Police Chief John Harrington and the City of St. Paul (collectively, "defendants") alleging violations of her Fourth and Fourteenth Amendment rights and state tort claims from two separate incidents. In the first incident, Mayard alleges she was tackled by an officer without warning as she was trying to get information about why the police were detaining her son, causing her injury. In the second incident, Mayard alleges officers forced her to take a breathalyzer test and

damaged her vehicle. Since the Court concludes the officer who tackled Mayard should have known the action was not reasonable, the Court denies summary judgment on claims arising from that incident. However, since Mayard claims a de minimus injury related to the second incident and officers had probable cause to believe she was intoxicated, the Court finds that the officers are protected by qualified immunity and therefore entitled to summary judgment. Regarding the property damage claims, the Court finds that Mayard has other remedies for redress and dismisses without prejudice so that she may pursue those options.

## BACKGROUND

Mayard alleges[1] that on December 25, 2007 at one o'clock a.m. (the "December incident"), Adam Bailey, a St. Paul police officer, stopped Mayard's son, Jimmy Micius, in front of Mayard's home. Micius was known to police as a member of the Selby Side gang. Bailey drew his gun to facilitate the arrest of Micius and called Siegfried to the scene to assist in the stop. At some point during the traffic stop, Mayard came out of her house and moved towards the scene while protesting the officers' actions. Mayard contends she was approaching the squad cars positioned away from the scene of the arrest, not her son's car, and that the officers gave her no warnings to stay away. At some point, Siegfried – who is considerably larger than the 110-pound Mayard –

[1] Mayard expands on her claim of excessive force in her Affidavit (Docket No. 45) beyond her description in her Second Amended Complaint. (Docket No. 33.) Defendants argue these facts should not be considered since they contradict facts in her pleadings. *See Nat'l Sur. Corp. v. Ranger Ins. Co.*, 260 F.3d 881, 886 (8th Cir. 2001). The Court finds that Mayard's Affidavit expands on her complaint, and given the deference on factual disputes to the non-movant at summary judgment, the Court incorporates these facts into its analysis.

restrained her and Mayard claims that he called her a "stupid woman." Mayard also asserts that in the process of detaining her, Siegfried grabbed her, threw her to the ground, and handcuffed her. She suffered an injury to her thumb, and requires continued medical care. Mayard asserts that later, in the back of his squad car, Siegfried said "[S]o you have been suing the city, have you? This is what you get when you sue the City." (Mayard Decl. ¶ 10, Docket No. 52.)

On February 22, 2009 at two o'clock a.m. (the "February incident"), during a city declared snow emergency, Officers Omari and Whitney found Mayard in her idling car in front of her home, and asked her to step out to see if she was intoxicated. The officers called for Schnell and McGinn to assist. Mayard claims the officers forced her to take off her shoes and walk through the snow. Additionally, despite her refusal, Mayard claims the officers forced her to take a breathalyzer test by holding a tube in her mouth and clenching her jaw around it with their fists. The test did not indicate she was intoxicated and the officers released Mayard. Mayard identified no specific injury as a result of the forced breathalyzer test. Mayard alleges that the officers struck her vehicle with a nightstick as they left the scene, damaging the trunk.

## DISCUSSION

### I. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit,

and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. *MONELL* PLEADING STANDARD

As a primary issue, the Court must determine if Mayard's complaint properly pleads liability against the individual officers or if the complaint should be solely interpreted as a claim against the municipality. *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978) (holding that municipalities could be sued under 42 U.S.C. § 1983 for violating constitutional rights of individuals if an official policy was responsible for the violation).

In *Johnson v. Outboard Marine Corp.*, the Eighth Circuit required an "express statement" in order for a public official to be sued in his or her individual capacity. 172 F.3d 531, 535 (8th Cir. 1999); *see also Artis v. Francis Howell N. Band Booster Assoc., Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998) ("If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity."); *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989).

At the same time, a court is required to read a pro se plaintiff's pleadings liberally. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Here, plaintiff's first two complaints were completed pro se, and she only had the assistance of an attorney shortly before this motion for summary judgment. The pleading, however, describes the facts in a manner that is sufficiently clear to offer the defendants notice of potential individual liability. *Nix*, 879 F.2d at 431. Therefore, the Court will address the merits of the claims and will not dismiss this action based on deficiencies in the pleadings.

## III. CLAIMS UNDER 42 U.S.C. § 1983

### A. Excessive Force

The first issue before the Court is whether a jury could find the officers used excessive force against Mayard in the December and February incidents. "The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person." *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir. 2003). However, individuals acting in an official capacity are entitled to qualified immunity unless their actions indicate immunity has been forfeited. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.")

Because qualified immunity is "an **immunity from suit** rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial."

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery . . . ." *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987). Accordingly, "[the Supreme Court] repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

In an action alleging violations of Fourth Amendment rights, this Court considers two questions to determine whether the officials are protected by qualified immunity: (1) whether the facts that Mayard has alleged or shown, when viewed in her favor, support a finding that the conduct of the officers violated a constitutional right, and (2) whether that constitutional right was "clearly established" at the time of the incidents such that a reasonable officer would have known that his or her actions were unlawful. *Pearson v. Callahan*, 129 S. Ct. 808, 815–16 (2009) (citations omitted); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). Qualified immunity is appropriate only if no reasonable fact-finder could answer yes to both of these questions. *Nelson v. Corr. Med. Serv.*, 583 F.3d 522, 528 (8th Cir. 2009).

December Incident: Viewing the facts in a light most favorable to Mayard, the officers forced Mayard to the ground, handcuffed and arrested her, and forced her into a squad car without any warnings. Mayard claims the use of force caused an injury to her thumb that required medical attention. The Court finds that a jury, if it believes Mayard, could conclude that these actions constitute excessive force. Thus, the remaining

question is whether the officers acted unreasonably, knowing their actions were unconstitutional. *See Pearson*, 129 S. Ct. at 815–16 (2009); *Saucier*, 533 U.S. at 201.

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1105 (8th Cir. 2004) (citing *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)). Mayard argues that a genuine issue of material facts exists because the question of whether Siegfried's actions – tackling her without warning – was reasonable is in question, and as such, the motion for summary judgment should be denied.

The facts that could be material to a jury's determination include whether during the December incident officers gave her warnings not to approach; whether she heard those warnings; and what route she was taking towards the vehicle. The Court finds the factual disputes surrounding the December incident are sufficiently material as to bar summary judgment. *See Rohrbough v. Hall*, 586 F.3d 582, 587 (8th Cir. 2009) ("Summary judgment is not appropriate where . . . a dispute remains regarding facts **material** to the qualified immunity issue." (emphasis added)). The reasonableness of Siegfried's actions depends heavily on the facts surrounding Mayard's approach to the vehicle prior to her arrest. Siegfried's actions – grabbing her and throwing her to the ground – would not necessarily be excessive if she constituted a threat to the officers. However, if the officers did not order her to stop and if she was not approaching the scene of the arrest as she claims, Siegfried should have known his actions were excessive

given the situation and her size relative to him. As a result, the Court finds that the actions of the officers during the December incident bar the application of qualified immunity at this stage of litigation, since Siegfried should have known he was acting contrary to Mayard's constitutional rights.

February Incident: Mayard alleges that the officers forced her to stand barefoot in the snow to do a field sobriety test, inserted a breathalyzer down her throat, and squeezed her cheeks while she was handcuffed. As to the February incident, Mayard claims no sustained injury, only that the officers' actions "hurt[] her." (Second Am. Compl. ¶ 18, Docket No. 33.)

While the Eighth Circuit has stated "[i]t remains an open question in this circuit whether an excessive force claim requires some minimum level of injury," *Hunter v. Namanny*, 219 F.3d 825, 831 (8th Cir. 2000), a de minimus use of force or injury is insufficient to support a finding of a constitutional violation. *Id.* at 831–32; *see also Curd v. City Court*, 141 F.3d 839, 841 (8th Cir. 1998) (reasoning that without an allegation of injury, "[e]ven if seizing an [arrestee's] arm and turning her body was unnecessary to effect the arrest, we cannot conclude that this limited amount of force was objectively unreasonable." (footnotes omitted)). Therefore, in addition to the circumstances surrounding the use of force, to determine the reasonableness of the use of force, the Court may also consider the **result** of the force. *Crumley*, 324 F.3d at 1007.

Since Mayard claims no injury as a result of the February incident, the Court considers the injury de minimus, thus the use of force did not amount to a constitutional

violation. The officers are therefore entitled to qualified immunity for their actions during the February incident.

In sum, the Court finds that Mayard has alleged sufficient facts to deny summary judgment on her excessive force claim as to the officers' actions during the December incident. The officers are, however, entitled to qualified immunity on Mayard's excessive force claims arising out of the February incident since her injuries are de minimus and therefore the officer's actions do not amount to a constitutional violation.

**B. Illegal Seizure**

Mayard claims that officers seized her person in violation of her Fourth Amendment rights at the February incident since they had no probable cause or reasonable suspicion to detain her. Again, utilizing the two-part analysis of the qualified immunity defense, the Court examines whether her constitutional rights were violated, and whether the police acted reasonably. *Pearson*, 129 S. Ct. at 815–16.

The constitutional right to be free of an investigative stop is dictated by the holding in *Terry v. Ohio*. 392 U.S. 1 (1968). An officer must have "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21.

Mayard admits that she was in her car in front of her house in the early morning on February 22, 2009. The police observed that her eyes were "glassy." (Omari Aff., Ex A at 3, Defs.' Mem. in Supp., Docket No. 45.) The City of St. Paul had instituted a snow emergency at 9:00 p.m. on February 21, 2009. Since Mayard was parked in

violation of the city ordinance and showed signs of intoxication, the officers' intrusion was reasonable. These details constitute "specific and articulable facts" sufficient to meet the officers' burden under *Terry*. 392 U.S. at 21. As a result, the officers' actions were not a constitutional violation and they are entitled to qualified immunity for their actions. The Court grants defendants summary judgment on this claim.

### C. *Monell* Claim

Mayard claims the City of St. Paul and Chief Harrington are liable for the officers' actions during both incidents for failure to train and supervise the officers in the course of their duties. In *Monell*, the Supreme Court held that a municipality is subject to liability under 42 U.S.C. § 1983 only when the violation of the plaintiff's federally protected right can be attributed to the enforcement of a municipal policy. 436 U.S at 694 ("[I]t is when execution of a government's **policy** or **custom**, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." (emphasis added)). Therefore, municipalities cannot be held liable under § 1983, "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Kuha v. City of Minnetonka*, 365 F.3d 590, 603 (8th Cir. 2003) (quoting *Monell*, 436 U.S. at 691) (overruled on other grounds).

A "policy" and a "custom" are not interchangeable terms in the context of a *Monell* analysis. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). "A 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the

municipal official who has final authority regarding such matters." *Id.* Here, Mayard has failed to identify any specific policy.

To establish the existence of a municipal "custom," Mayard must show: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) her injury by acts pursuant to the governmental entity's custom prove that the custom was the moving force behind the constitutional violation. *Ware v. Jackson Cnty.*, 150 F.3d 873, 880 (8th Cir. 1998).

Mayard has alleged two separate incidents of excessive force in her Second Amended Complaint and provided evidence about a disorderly conduct charge against one of the officers, Siegfried. (Friedemann Decl. Ex. C, Docket No. 51.) The Court does not find that this evidence rises to the level of a "continuing, widespread, persistent" pattern.

Since Mayard is unable to show that the St. Paul Police Department had an unconstitutional custom, practice, or policy, she is therefore unable to show they were the "moving force" behind the constitutional violation. *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Therefore, the Court grants the City of St. Paul and Chief Harrington summary judgment on this claim.

**D. Deprivation of Property**

Mayard alleges that during the February incident officers struck her car with a nightstick causing damage to the trunk, constituting a deprivation of property without due process of law under the Fourteenth Amendment. Even if the damage to Mayard's car rose to the level of a deprivation, the Supreme Court has held that such a deprivation is not a constitutional violation of due process if a meaningful post-deprivation remedy for the loss is available. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[I]ntentional deprivations [of property] do not violate [the Due Process] Clause provided, of course, that adequate state post-deprivation remedies are available."). Here, Mayard has a remedy because she can pursue a tort action against St. Paul for any losses caused by the officers. Minn. Stat. § 466.02 ("[E]very municipality is subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties whether arising out of a governmental or proprietary function."). Since the exercise of supplemental jurisdiction over this claim would only be appropriate if there remained a viable federal claim for the February incident, *see* 28 U.S.C. § 1367, the Court dismisses this claim without prejudice. Mayard can appropriately bring her claim in state court, or through St. Paul's administrative claims procedures.

## IV. STATE LAW CLAIMS

Mayard claims battery and trespass to chattel in her opposition to summary judgment. Although Mayard characterized these state law claims differently in her Second Amended Complaint, the state law allegations are based on the same facts.

Therefore, the Defendants were on notice as to these allegations. *Nix*, 879 F.2d at 431. Additionally, Mayard filed her initial complaints pro se, and pro se plaintiffs receive a greater degree of leeway in pleading. *See Estelle*, 429 U.S. at 106. Therefore the Court will analyze Mayard's claims as articulated in her opposition to summary judgment.

**A. Battery**

Minnesota state common law provides that "a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong." *Elwood v. Rice Cnty.*, 423 N.W.2d 671, 678 (Minn. 1988) (quoting *Susla v. State*, 247 N.W.2d 907, 912 (1976)). "Police officers are generally classified as discretionary officers entitled to official immunity." *Maras v. City of Brainerd*, 502 N.W.2d 69, 77 (Minn. Ct. App. 1993) (citing *Johnson v. Morris*, 453 N.W.2d 31, 42 (Minn. 1990)).

In the official immunity context, willful and malicious are synonymous, *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991), and mean "intentionally committing an act that the official has reason to believe is **legally** prohibited." *Kelly v. City of Minneapolis*, 598 N.W.2d 657, 663 (Minn. 1999) (emphasis added) (citing *State by Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 571 (Minn. 1994)). This definition differs from the common law understanding of malice and intent.

> The [malice] exception does not impose liability merely because an official **intentionally** commits an act that a court or a jury subsequently determines is a wrong. Instead, the exception anticipates liability only when an official intentionally commits an act that he or she then has reason to believe is [legally] prohibited.

*Rico*, 472 N.W.2d at 107. The intent of official immunity is to protect honest law enforcement efforts but not "to shield police brutality." *Elwood*, 423 N.W.2d at 679.

Therefore, the officers are entitled to official immunity unless the facts, in a light most favorable to Mayard, demonstrate malice. Here, the actions by Siegfried at the December incident could be viewed by a jury as excessive force. The jury could also reasonably conclude that Siegfried knew excessive force is legally prohibited. Siegfried, therefore, is not protected by official immunity for his actions on that day.

Battery is the "intentional unpermitted offensive contact with another." *Paradise v. City of Minneapolis*, 297 N.W.2d 152, 155 (Minn. 1980). If a police officer uses excessive force when physically contacting an individual, he or she may be liable for battery. *Sang v. City of St. Paul*, No. 09-455, 2010 WL 2346600, at *7 (D. Minn. June 8, 2010) (citing *Johnson v. Peterson*, 358 N.W.2d 484, 485 (Minn. Ct. App. 1984)); *see Paradise*, 297 N.W.2d at 155 ("[I]f the officers in this case used excessive force, their touching of plaintiff would be unpermitted and thus constitute a battery.").

As discussed above, taking the facts in the light most favorable to Mayard a jury could reasonably conclude that Siegfried used excessive force during the December incident. For the same reasons, the jury could find Siegfried liable for battery under Minnesota state law. As a result, the Court denies summary judgment on this state law claim as it pertains to Siegfried.

During the February 22, 2009 incident, Mayard was forced to remove her shoes and stand in the snow. The officers then forced her to take a breathalyzer test. While of questionable judgment because the officers could have initiated sanctions for her refusal,

*see* Minn. Stat. § 169A.52, since these actions are not prohibited by law, this Court declines to strip the officers of their immunity in a larger scenario of reasonable and appropriate public safety actions. *See Rico*, 472 N.W.2d at 107.

In sum, the Court grants summary judgment for the defendants in connection with the February incident and denies summary judgment for the December incident on this claim.

### B. Trespass to Chattel

Mayard also alleges trespass to chattel when a police officer struck and dented her vehicle with his nightstick during the February incident. "A trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." Restatement (Second) of Torts § 222 (1965). Since the exercise of supplemental jurisdiction over this claim would only be appropriate if there remained a viable federal claim for the February incident, 28 U.S.C. § 1367, the Court dismisses this claim without prejudice.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 44] is **GRANTED in part** and **DENIED in part** as follows:

1. The motion is **granted** as to Count One, in regards to the February 22, 2009 incident only, and that claim is **DISMISSED with prejudice**.

2. The motion is **granted** as to Counts Two, Three, and Four of the plaintiff's federal law claims, and those claims are **DISMISSED with prejudice**.

3. The motion on Count One (excessive force) is **denied** as to the December 25, 2007 incident.

4. Plaintiff may amend her complaint within twenty (20) days of the date of this Order to properly articulate her state law claim of battery.

5. Plaintiff's state claim of trespass to chattel is **DISMISSED without prejudice**.

DATED: February 8, 2011
at Minneapolis, Minnesota.

s/ John R. Tunheim
JOHN R. TUNHEIM
United States District Judge